# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KAREN BAUTISTA,<br><br>                    Plaintiff,<br><br>      vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br>                    Defendant. | No. 1:15-CV-03064-MKD<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 13, 19 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 13, 19.  The parties consented to proceed before a magistrate judge.  ECF No. 25.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court grants Plaintiff's motion (ECF No. 13) and denies Defendant's motion (ECF No. 19).

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing

the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual  functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv);  416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for disability insurance benefits on January 2, 2008, and supplemental security income benefits on January 14, 2008. Tr. 131-33, 134-37. In both applications, Plaintiff alleged a disability onset date of July 29, 2007. Tr. 242-50, 252-58. The applications were denied initially, Tr. 74-77, and on reconsideration, Tr. 83-89. Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on November 12, 2014. Tr. 567-610. On March 5, 2015, the ALJ denied Plaintiff's claim.[1] Tr. 510-25.

At the outset, the ALJ found that Plaintiff met the insured status requirements

---

[1] A prior hearing was held before a different ALJ on June 10, 2010. Tr. 35-69. On June 24, 2010, the ALJ denied Plaintiff's applications. Tr. 18-24. In December 2013, the District Court granted Plaintiff's motion for summary judgment, reversed, and remanded for a new hearing and further administrative proceedings. *See* Case No. 2:12-cv-03051-MHW at ECF Nos. 21, 22. The Appeals Council ordered remand for further administrative proceedings. Tr. 656-58.

of the Act with respect to her disability insurance benefit claim through December 31, 2011. Tr. 513. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, July 29, 2007. Tr. 513. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; asthma; bilateral carpal tunnel syndrome (status post bilateral surgical release); headaches; and obesity. Tr. 513. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 513. The ALJ then concluded that Plaintiff has the RFC to perform a range of light work, with additional limitations. Tr. 515. At step four, the ALJ found that Plaintiff is able to perform her past relevant work as a cashier and order clerk. Tr. 523. Alternatively, at step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as production assembler and hand packager. Tr. 525. On that basis, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act. Tr. 525. The Appeals Council denied

1   review,[2] making the ALJ's decision the Commissioner's final decision for purposes

2   of judicial review.   *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

3                                          **ISSUES**

4          Plaintiff seeks judicial review of the Commissioner's final decision denying

5   her disability income benefits under Title II and supplemental security income

6   benefits under Title XVI of the Social Security Act.  ECF No. 13.  Plaintiff raises the

7   following issues for this Court's review:

8          1.  Whether the ALJ properly weighed the medical opinion evidence;

9          2.  Whether the ALJ properly discredited Plaintiff's symptom claims;

10         3.  Whether the ALJ properly determined Plaintiff's severe impairments at

11             step two; and

12         4.  Whether the ALJ properly found that Plaintiff can perform her past

13             relevant work; alternatively, whether the ALJ properly found that there are

14             other jobs that Plaintiff could perform.

15  ECF No. 13 at 7.

16

17

18

     _____

19  [2] This document is not in the Court's record.  As neither party raises an issue in this

20  respect, the Court presumes the document was inadvertently omitted.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

# DISCUSSION

## A. Medical Opinion Evidence

Plaintiff faults the ALJ for failing to discuss the opinion of examining psychologist Paul Schneider, Ph.D., and for discrediting the opinions of treatment providers Fady Sabry, M.D., and Nancy Schwartzcopf, ARNP.  ECF No. 13 at 18-23.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)."  *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  "However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

Here, Dr. Schneider's opinion is essentially uncontradicted; accordingly, the ALJ was required to provide clear and convincing reasons for discounting it. *Bayliss,* 427 F.3d at 1216. Dr. Sabry's and Ms. Schwartzkopf's opinions were contradicted by other treating and examining sources; accordingly, the ALJ was required to provide specific, legitimate reasons supported by substantial evidence to reject Dr. Sabry's opinion, *Bayliss,* 427 F.3d at 1216, and germane reasons for rejecting Ms. Schwartkopf's opinion, *Molina*, 674 F.3d at 1114.

### 1.  Dr. Schneider

Plaintiff alleges that the ALJ failed to discuss an October 2011 opinion, Tr. 866-70, by examining psychologist Paul Schneider, Ph.D.  ECF No. 13 at 19-20.

In October 2011, Dr. Schneider conducted a psychological evaluation and diagnosed Plaintiff with pain disorder associated with both psychological factors and general medical condition; post-traumatic stress disorder (PTSD) in partial

remission; and sleep disorder, insomnia, likely due to "schedule and pain issues."
Tr. 869.  Dr. Schneider opined that Plaintiff was likely unable to work, but that over
time, with behavioral changes, "she may well be able to work someday."  Tr. 869-
70.

"Where an ALJ does not explicitly reject a medical opinion or set forth
specific, legitimate reasons for crediting one medical opinion over another, he errs."
*Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing *Nguyen v. Chater*,
100 F.3d 1462, 1464 (9th Cir. 1996)).  In other words, an ALJ errs when he rejects a
medical opinion or assigns it little weight while doing nothing more than ignoring it,
asserting without explanation that another medical opinion is more persuasive, or
criticizing it with boilerplate language that fails to offer a substantive basis for his
conclusion.  *Garrison*, 759 F.3d at 1012-13.

Here, the ALJ failed to discuss Dr. Schneider's opinion, other than to include
in her credibility assessment some of the activities Plaintiff described to Dr.
Schneider.  The ALJ's sole reference to Dr. Schneider's opinion simply noted:

> The claimant reported that she would walk for forty-five minutes several
> times per week as exercise.  She also stated that she was "busy with her
> grandchildren three or four times a week."

Tr. 520 (citing Tr. 868) (Dr. Schneider's evaluation).  The ALJ did not otherwise
address the evaluation, including Dr. Schneider's opinion that Plaintiff was "likely"
unable to work due to a combination of mental and physical impairments.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

1    The Commissioner correctly notes that Plaintiff failed to allege depression or

2    other mental impairments as part of her application.  ECF No. 19 at 10.  However,

3    there is medical evidence from treating sources referring to mental impairments

4    (depression), including diagnoses and medication treatment, as well as brief

5    testimony from Plaintiff regarding depression.  Accordingly, as the only examining

6    psychologist, Dr. Schneider's opinion clearly has some relevance to Plaintiff's

7    possible mental impairments and resulting limitations.

8    For example, Plaintiff's treating sources have specifically discussed treatment

9    for depression.  *See, e.g.*, Tr. 863 (in January 2012, treatment provider Mary

10   Murphy, PAC, noted that depakote is helping a little with Plaintiff's depression); Tr.

11   762 (in September 2013, treating source Nancy Schwartzkopf, ARNP, assessed, in

12   part, depressive disorder, NOS; however, Plaintiff declined treatment); Tr. 814-15

13   (in November 2013, Guy Garrett, PAC, listed depression as a chronic problem); Tr.

14   883 (in October 2014, Ms. Schwartzkopf assessed depressive disorder).

15   Moreover, as the only examining psychologist, Dr. Schneider's opinion is

16   uncontradicted.  If a treating or examining physician's opinion is uncontradicted, an

17   ALJ may reject it only by offering "clear and convincing reasons that are supported

18   by substantial evidence." *Bayliss*, 427 F.3d at 1216.  Here, the ALJ did not give *any*

19   reason for rejecting Dr. Schneider's opinion.  Moreover, at step two, the ALJ failed

20   to address whether Plaintiff suffered from any severe mental impairment.  Tr. 513.

At the hearing, Plaintiff testified that she tries "not to" have a problem with depression.  Tr. 599.  The ALJ was required to discuss Dr. Schneider's opinion because, although Plaintiff did not allege mental limitations as part of her application for benefits, Dr. Schneider's opinion had some support in the medical record by treating sources, is supported minimally by Plaintiff's own testimony, and, significantly, is not contradicted.

For these reasons, the ALJ erred when she failed to discuss Dr. Schneider's opinion.

### 2.  Dr. Sabry

Next, Plaintiff faults the ALJ for discrediting the opinions of treating physician provider Fady Sabry, M.D.  ECF No. 13 at 20-23.

In May 2008, Dr. Sabry assessed an RFC for sedentary work due to mild to moderate asthma; Tr. 219, while six months later, he again assessed an RFC for sedentary work, due to moderate asthma and CTS.  Tr. 366.   Roughly three years later, in January 2011, he assessed an RFC for less than sedentary work, because he opined Plaintiff was unable to lift any amount of weight, occasionally or frequently; Plaintiff could sit and stand for one hour in an eight-hour work day; and no environmental or manipulative restrictions were assessed.  Tr. 773-74.  Dr. Sabry did not specify the impairments causing the claimant's limitations, but he opined that pain management and pulmonary consultations were needed.  *Id.*

1    The ALJ gave minimal weight to Dr. Sabry's opinions, except to agree with

2    his opinion from 2008 that the claimant's evidence of record is consistent with her

3    ongoing ability to persist with some form of gainful activity after onset.  Tr. 521.

4        First, the ALJ rejected these opinions as unsupported by Dr. Sabry's own

5    exam findings.  Tr. 521.  Contradictions between a doctor's opinion and his own

6    medical results provides a permissible basis to reject his opinion.  *See Bayliss*, 427

7    F.3d at 1216.  For example, the ALJ found that Dr. Sabry's November 2008 exam

8    revealed normal upper extremities, normal neurological findings, and normal gait

9    and station.  Tr. 521 (citing Tr. 364-65); again in January 2011, Dr. Sabry's exam

10   documented normal respiratory findings, normal lumbar spine rotation, and negative

11   single leg raise tests when Plaintiff was seated.  The ALJ noted that this exam was

12   otherwise devoid of any testing of Plaintiff's strength, sensation, or mobility.  Tr.

13   521 (citing Tr. 773-77).   The ALJ notes that in Dr. Sabry's May 2008 opinion, the

14   doctor did not refer to any positive examination findings.  Tr. 521 (citing Tr. 418).

15   This was a specific and legitimate reason to reject Dr. Sabry's opinion.

16       Second, the ALJ rejected Dr. Sabry's opinions because they were inconsistent

17   with Plaintiff's work history.  Tr. 521.  An ALJ may discount an opinion that is

18   inconsistent with a claimant's reported functioning.  *See Morgan v. Comm'r of Soc.*

19   *Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  The ALJ found that Plaintiff's

20   ability to work at the medium exertional level with essentially the same limitations

1   assessed by Dr. Sabry, limitations that he opined resulted in an RFC for sedentary

2   work, undermined Dr. Sabry's opinion that Plaintiff was more severely limited.  Tr.

3   521.  *See* Tr. 164-67 (In September 2014, Plaintiff told provider Ms. Schwartzkopf

4   that she had had back pain for fifteen years, Plaintiff had worked mainly at a

5   medium exertion level until 2007); Tr. 199 (Plaintiff's report of her work history).

6   This was a specific and legitimate reason to reject the medical opinion.

7          Third, the ALJ rejected Dr. Sabry's opinions, finding them inconsistent with

8   the longitudinal treatment records, and by records indicating the assessed conditions

9   have "either improved or been stable with treatment since 2007."  Tr. 521.  An ALJ

10   may discredit treating physicians' opinions that are conclusory, brief, and

11   unsupported by the records as a whole, or by objective medical findings.  *Batson v.*

12   *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citations

13   omitted).  The ALJ relied on other examinations that were inconsistent with an RFC

14   for sedentary work because they were essentially normal.  *See* Tr. 521 (citing Tr.

15   335) (At an exam in April 2009, Plaintiff's back, neck, spine and extremities were

16   all normal; no tenderness in Plaintiff's musculoskeletal system is noted); Tr. 517

17   (citing Tr. 304) (in March 2008, Plaintiff displayed clear lungs and normal

18   respiration, asthma deemed stable); (citing Tr. 332) (in April 2009, Dr. Sabry noted

19   respiratory: "Normal to inspection.  Lungs clear to ascultation.").  Moreover,

20

treatment records showed improvement in asthma with medication,[3] in CTS

following surgeries,[4] and lower back pain complaints were inconsistent with normal

examination findings, *see, e.g.*, Tr. 335 (essentially normal examination).

Because an ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory, and inadequately supported by

clinical findings, *Bray*, 554 F.3d at 1228, and is not required to find an impairment

disabling if symptoms can be controlled with medication, *Warre v. Comm'r of Soc.

Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (symptoms effectively controlled

with medication are not disabling for purposes of determining eligibility for

---

[3] *See* Tr. 245 (asthma improved "a lot" with a change in medication in November 2004); Tr. 279 (asthma symptoms worsened when Plaintiff ran out of medication in February 2008); Tr. 406 (in November 2009, Dr. Sabry noted that Plaintiff was "currently stable on three asthma medications."); Tr. 587 (Plaintiff testified that her asthma improved with medication and treatment).

[4] *See* Tr. 394, 387 (Plaintiff underwent right carpal tunnel release on March 1, 2009 and left on May 5, 2009); Tr. 582 (Plaintiff testified that the surgeries helped.).  The ALJ further noted that Plaintiff had no treatment for CTS after mid-2009.  Tr. 519-20.

benefits), the ALJ provided a specific, legitimate reason supported by substantial evidence for discrediting Dr. Sabry's opinions.

### 3. Nurse Schwartzkopf

Plaintiff contends that the ALJ failed to properly weigh the opinion of Nancy Schwartzkopf, ARNP.  ECF No. 13 at 22-23.  Specifically, Plaintiff contends that the ALJ ignored the objective basis of these opinions: spinal imaging, pain management treatment records, and Plaintiff's severe obesity.  ECF No. 13 at 22 (citing Tr. 883).

In October 2014, Ms. Schwartzkopf, who had treated Plaintiff from August 2012, completed a medical report, opining that Plaintiff was unable to stand or walk, that she was unable to lift even two pounds, and that she would miss work four or more days per month.[5]  Tr. 884-84.  Further, Ms. Schwartzkopf opined that these limitations had been ongoing since 2012.  Tr. 884-85.  The ALJ gave minimal weight to this opinion.  Tr. 521.

First, the ALJ noted that the assessed limitations were inconsistent with Plaintiff's work history.  Tr. 521.  An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning.  *Morgan*, 169 F.3d at 601-02.

---

[5] The ALJ mistakenly cited the limitation as "would miss four or more day[s] per week," Tr. 521, but this is apparently a typographical error.

The ALJ pointed out that "the claimant's longstanding obesity and physical impairments have not prevented gainful employment at a medium exertion level and do not appear to have significantly worsened since her alleged onset date."  Tr. 521.  For example, Plaintiff worked at a medium exertion level beginning in either 2004[6] or 2005[7] until July 2007 as a caregiver, Tr. 164-65; yet in 2014, Plaintiff reported she had experienced back pain for fifteen years, Tr. 804, showing that she worked with the same impairment at a greater exertion level than assessed by Ms. Schwartzkopf.   Plaintiff's work as a hardware laborer, from July 2000 through 2002, was also a medium exertion job.  Tr. 164-67.   Plaintiff testified that she worked at a hardware store as a receptionist, delivery driver, and laborer; she also did some duties related to bookkeeping.  Tr. 585-86.  This was a germane reason to reject Ms. Schwartzkopf's opinions.

Second, the ALJ noted that the assessed limitations were inconsistent with Plaintiff's daily activities.  Tr. 521-22.  An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning.  *Morgan*, 169 F.3d at 601-02.  In

---

[6] Plaintiff reported she worked as a caregiver from February 3, 2005, until July 29, 2007.  Tr. 199.

[7] Plaintiff reported she worked as a caregiver beginning in February 2004.  Tr. 164-65.

support of her finding, the ALJ cited Plaintiff's activities that further undermine Ms.

Schwartzkopf's assessed limitations, including Plaintiff's ability to care for an

infant, Tr. 578, to serve "as a caretaker for her chronically sick fiancé," Tr. 574-76,

and to drive, Tr. 575.  Tr. 522.  The ALJ reasonably determined that these daily

activities were inconsistent with the severe assessed limitations identified by Ms.

Schwartzkopf.  This was another germane reason for discounting Ms.

Schwartzkopf's opinion.

Third, the ALJ found that the assessed limitations were inconsistent with the

medical record.  Tr. 521.  An ALJ may discredit treating physicians' opinions that

are conclusory, brief, and unsupported by the record as a whole, or by objective

findings.  *Batson,* 359 F.3d at 1195.  The ALJ observed that the December 2010

MRI of Plaintiff's lumbar spine revealed mild to moderate degenerative disc disease,

with mild to moderate foraminal narrowing and no evidence of central canal

stenosis.  Tr. 521-22 (citing Tr. 494).  Similarly, the ALJ pointed out that in

December 2011, cervical spine imaging revealed mild to moderate degenerative

changes, with no evidence of instability with flexion or extension.  Tr. 522 (citing

Tr. 796).  The ALJ identified germane reasons for discounting this opinion.

**B.  Adverse Credibility Finding**

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19

1    Plaintiff faults the ALJ for failing to provide specific findings with clear and

2    convincing reasons for discrediting her symptom claims.  ECF No. 13 at 8-18.

3    An ALJ engages in a two-step analysis to determine whether a claimant's

4    testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

5    determine whether there is objective medical evidence of an underlying impairment

6    which could reasonably be expected to produce the pain or other symptoms alleged."

7    *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not

8    required to show that her impairment could reasonably be expected to cause the

9    severity of the symptom she has alleged; she need only show that it could reasonably

10    have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591

11    (9th Cir. 2009) (internal quotation marks omitted).

12    Second, "[i]f the claimant meets the first test and there is no evidence of

13    malingering, the ALJ can only reject the claimant's testimony about the severity of

14    the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

15    rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

16    citations and quotations omitted).  "General findings are insufficient; rather, the ALJ

17    must identify what testimony is not credible and what evidence undermines the

18    claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834)); *Thomas v. Barnhart*,

19    278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility

20    determination with findings sufficiently specific to permit the court to conclude that

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 20

1   the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and

2   convincing [evidence] standard is the most demanding required in Social Security

3   cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin*.,

4   278 F.3d 920, 924 (9th Cir. 2002)).

5       In making an adverse credibility determination, the ALJ may consider, *inter*

6   *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

7   claimant's testimony or between her testimony and her conduct; (3) the claimant's

8   daily living activities; (4) the claimant's work record; and (5) testimony from

9   physicians or third parties concerning the nature, severity, and effect of the

10  claimant's condition.  *Thomas*, 278 F.3d at 958-59.

11      This Court finds the ALJ provided specific, clear, and convincing reasons for

12  finding that Plaintiff's statements concerning the intensity, persistence, and limiting

13  effects of her symptoms were "not credible."  Tr. 516.

14      *1.  Ability to Work With Impairments*

15      First, the ALJ found that Plaintiff's allegedly disabling impairments have not

16  prevented her from performing medium exertion work in the past.  Tr. 516.

17  Working with an impairment supports a conclusion that the impairment is not

18  disabling.  *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992).  For

19  example, the ALJ found that for a period between 2000 and 2002, Plaintiff worked

20  at a hardware store, where she stocked, performed clerical and receptionist's duties,

1    and drove deliveries.  Tr. 516 (citing Tr. 199).  The ALJ further found that between

2    2004 and mid-2007, Plaintiff was again gainfully employed, during which time she

3    worked as a cashier and caregiver.  Tr. 516 (citing Tr. 164-65, 199).  Her work as a

4    caregiver involved walking and/or standing at least five hours per day (six hours per

5    day as a cashier), and frequently lifting twenty-five pounds.  *Id.*  Moreover, the ALJ

6    found that when Plaintiff worked a caregiver in July 2006, she told medical

7    providers that she performed this job despite bilateral pain, tingling, and impaired

8    grip in her upper extremities.  Tr. 516 (citing Tr. 272).

9        Because an ALJ may properly consider the ability to work despite physical

10   impairments as lessening a claimant's credibility, *see, e.g., Gregory v. Bowen*, 844

11   F.2d 664, 667 (9th Cir. 1988), this was a clear and convincing reason for discounting

12   Plaintiff's credibility.

13       *2.  Reason Employment Ended*

14       Next, the ALJ determined that Plaintiff stopped working for reasons unrelated

15   to her impairments.  Tr. 516.  An ALJ may consider that a claimant stopped working

16   for reasons unrelated to the allegedly disabling condition in making a credibility

17   determination.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (the

18   ALJ properly discounted Plaintiff's credibility based, in part, on the fact that the

19   claimant's reason for stopping work was not related to his disability); *Bruton v.*

20   *Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (the fact that the claimant left his job

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 22

because he was laid off, rather than because he was injured, was a clear and convincing reason to find him not credible). The ALJ noted that Plaintiff testified her employment at the hardware store ended because her position was eliminated. Tr. 517 (citing Tr. 585). In addition, Plaintiff's work as a caregiver ended when her father died. Tr. 517 (citing Tr. 583). Similarly, Plaintiff continued to work as a cashier after her father's death; however, this job at a roadside fruit stand ended because it was seasonal. Tr. 517 (citing Tr. 584). The ALJ properly considered and reasonably concluded that Plaintiff's condition was not the reason that she stopped working when assessing her credibility.

### 3. Impairments Controlled by Medication

The ALJ found that Plaintiff's asthma appeared to be well-controlled with medication. Tr. 516-17. Conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits. *Warre,* 439 F.3d at 1006. The ALJ noted several instances in the medical record supporting this conclusion. Tr. 516-17 (citing Tr. 245 (asthma was much improved with a change of medication in November 2004); Tr. 279 (Plaintiff's asthma symptoms worsened when she ran out of medication in February 2008); Tr. 406 (in November 2009, Dr. Sabry noted that Plaintiff was currently stable on three asthma medications); Tr. 587 (Plaintiff testified that her asthma symptoms improved with medication and treatment)). This was another clear and convincing reason for finding Plaintiff's

complaints of severe limitations less than fully credible.

### 4. Lack of Objective Medical Evidence

The ALJ found that Plaintiff's alleged physical impairments and their corresponding symptoms were not supported by the medical evidence. Tr. 516-20. Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ noted few objective findings support the level of limitations alleged. Tr. 519. For example, a lumbar MRI in December 2010 revealed only mild to moderate degenerative disk disease, with mild to moderate foraminal narrowing and no evidence of central canal stenosis. Tr. 519 (citing Tr. 493); *see also* Tr. 465 (January 2011 exam reveals DTR's are preserved and symmetric). As another example, the ALJ noted that in December 2011, Plaintiff reported that her upper and lower back pain was mild and stable, and that these pain symptoms had been ongoing for ten years. Tr. 519 (citing Tr. 779). On exam, Plaintiff displayed normal mobility in her lumbar and cervical spine; she described mild pain with motion in her cervical spine; and normal range of motion in her shoulders. Plaintiff demonstrated intact balance and gait, no motor weakness, and no sensory loss. Tr.

519 (citing Tr. 782).  Plaintiff was able "to perform deep knee bend" without

problems.  Tr.  520 (citing Tr. 783).

Because an ALJ may discount pain and symptom testimony based on lack of

medical evidence, as long as it is not the sole basis for discounting a claimant's

testimony, the ALJ did not err when she found Plaintiff's complaints exceeded and

were not supported by objective and physical exam findings.

### 5. *Daily Activities*

The ALJ found that the level of physical impairment alleged was inconsistent

with Plaintiff's reported daily activities.  Tr. 520.  A claimant's reported daily

activities can form the basis for an adverse credibility determination if they consist

of activities that contradict the claimant's "other testimony" or if those activities are

transferable to a work setting.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see

also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities may be

grounds for an adverse credibility finding "if a claimant is able to spend a substantial

part of his day engaged in pursuits involving the performance of physical functions

that are transferable to a work setting.").  Here, the ALJ found, for example, Plaintiff

testified that she was currently serving as a caretaker for her chronically ill fiance,

which entailed helping him dress, preparing his meals, and helping him stand.  Tr.

520 (citing Tr. 573-75).  The ALJ noted Plaintiff also testified that she occasionally

cared for a six-month old grandchild and was able to drive, Tr. 575; she regularly

1    played computer games using a keyboard, Tr. 579-80; in 2008, prior to carpal tunnel

2    release surgeries, Plaintiff was able to prepare her own meals, Tr. 582; and

3    Plaintiff's activities in 2008 included beadwork, hiking, and searching for agates and

4    other rocks.  Tr. 520 (citing Tr. 581-82).  She had taken lengthy road trips, including

5    to Sacramento, California and Vancouver, Washington, after onset.  Tr. 520 (citing

6    576-77).

7         "While a claimant need not vegetate in a dark room in order to be eligible for

8    benefits, the ALJ may discredit a claimant's testimony when the claimant reports

9    participation in everyday activities indicating capacities that are transferable to a

10   work setting" or when activities "contradict claims of a totally debilitating

11   impairment."  *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations

12   omitted).  The record supports the ALJ's determination that the range of both

13   physical and mental activities that Plaintiff reported are inconsistent with allegedly

14   disabling limitations and demonstrate an ability to perform work-like activities.  The

15   ALJ properly relied on daily activities that exceeded alleged limitations when she

16   assessed Plaintiff's credibility.

17        In sum, despite Plaintiff's arguments to the contrary, the ALJ provided

18   specific, clear, and convincing reasons, supported by the record, for rejecting

19   Plaintiff's testimony.  *See Ghanim*, 763 F.3d at 1163.

20

**C.  Step Two**

Plaintiff contends that the ALJ erred at step two by failing to include several severe impairments.  EFC No. 13 at 23-24.   Specifically, Plaintiff contends the ALJ should have included fibromyalgia/pain disorder and "multiple severe mental impairments."  ECF No. 13 at 26.

Given the Court's prior findings regarding the medical opinion evidence, on remand, the ALJ should reevaluate the step two findings.  The ALJ should assess whether the diagnosed conditions of fibromyalgia, pain disorder, and depression constitute severe impairments, and determine whether any impairments or any combination of impairments result in additional limitations or render Plaintiff unable to perform work.  A medical and psychological expert may be helpful in assisting the ALJ on remand.

**D.  Steps Four and Five**

Upon remand, the ALJ will need to perform a new step four and possibly step five analysis after considering Dr. Schneider's opinion and the evidence of other impairments at step two, as discussed *supra*.

**E.  Remedy**

This Court finds that the ALJ erred by failing to address the uncontradicted opinion of examining psychologist Dr. Schneider, the only source who evaluated Plaintiff specifically for mental limitations.  The question remains whether the ALJ's

1  error was harmless.

2      Based upon Plaintiff's RFC, which included no mental limitations, and the

3  vocational expert's testimony, the ALJ found Plaintiff able to perform her past

4  relevant work as a cashier and order clerk.  Tr. 523.  Consequently, the ALJ found

5  Plaintiff was not disabled within the meaning of the Social Security Act.  Tr. 524.

6  *See* 20 C.F.R. §§ 404.1560(b)(3) ("If we find that you can still do your past relevant

7  work, we will determine that you can still do your past work and are not disabled."),

8  416.960(b)(3)(same).

9      A reviewing court cannot consider an error harmless unless it can confidently

10  conclude that no reasonable ALJ, when fully crediting the testimony, could have

11  reached a different disability determination.  *See Stout v. Comm'r of Soc. Sec.*

12  *Admin.,* 454 F.3d 1050, 1056 (9th Cir. 2006).  This Court cannot so conclude.  For

13  example, if fully credited, Dr. Schneider's opinion could potentially support a

14  conclusion that Plaintiff is unable to work.  Consequently, the ALJ's error in failing

15  to provide reasons for rejecting it was not harmless.

16      Administrative proceedings are useful where there is a need to resolve

17  conflicts and ambiguities in the evidence.  *Treichler v. Comm'r of Soc. Sec. Admin.,*

18  775 F.3d 1090, 1101 (9th Cir. 2014) (citing *Andrews v. Shalala,* 53 F.3d 1035, 1039

19  (9th Cir. 1995)).  Here, there are conflicts to resolve.  In determining the RFC, the

20  ALJ is required to consider the combined effect of all the claimant's impairments,

mental and physical, exertional and non-exertional, severe and non-severe.  42 U.S.C. § 423(d)(2)(B), (5)(B).  Here, this Court finds that upon remand, the ALJ must consider Plaintiff's mental impairments and any resulting limitations.  For example, the ALJ did not consider mental impairments when she assessed credibility.  *See* Tr. 513-20.  If the ALJ determines on remand that Plaintiff suffers mental impairments with resulting limitations, vocational testimony may be required to determine whether mental limitations erode the occupational base of jobs Plaintiff is potentially able to perform.

"Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler,* 775 F.3d at 1101.  Instead, this Court remands this case for further proceedings.

## CONCLUSION

The ALJ's decision is not supported by substantial evidence or free of legal error.  On remand, the ALJ should conduct a new hearing and (1) consider at step two the evidence of mental impairments and proceed if necessary with the sequential evaluation; (2) take the testimony of medical and psychological experts, if necessary, to determine Plaintiff's RFC; and (3) take the testimony of a vocational expert, if necessary, to determine whether Plaintiff is able to work and if there are past or other jobs that Plaintiff is able to perform.

**IT IS ORDERED:**

1.      Plaintiff's Motion for Summary Judgment (ECF No. 13) is **GRANTED** and the matter is remanded to the Commissioner for additional proceedings pursuant to sentence four.  42 U.S.C. § 405(g).

2.      Defendant's Motion for Summary Judgment (ECF No. 19) is **DENIED.**

3.      An application for attorney's fees may be filed by separate motion.

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE PLAINTIFF, REMAND THE CASE FOR FURTHER PROCEEDINGS**, provide copies to counsel, and **CLOSE** the file.

DATED this 28th day of September, 2016.

                                        *S/Mary K. Dimke*
                                        MARY K. DIMKE
                                UNITED STATES MAGISTRATE JUDGE